BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

APR -3 1979

PATRICIA D. HOWARD
CLERK OF THE PANEL

In re Motion Picture Licensing    )    Docket No. 366
Antitrust Litigation              )

                    OPINION AND ORDER
                    _____

BEFORE MURRAY I. GURFEIN, CHAIRMAN, AND EDWIN A. ROBSON,
STANLEY A. WEIGEL, ANDREW A. CAFFREY, ROY W. HARPER, AND
CHARLES R. WEINER, JUDGES OF THE PANEL.

PER CURIAM

I.  BACKGROUND

     This litigation presently consists of nine actions[1]

pending in a total of seven federal districts:  two each

in the District of Arizona and the Southern District of

Texas; and one each in the Southern District of California,

the Northern District of Georgia, the Western District of

Tennessee, the Middle District of Florida and the District

_____

[1]   Two additional actions, Wilder Enterprises, Inc. v.
Allied Artists Pictures Corporation, et al., E. D. Virginia,
C. A. No. 77-637-N and FLW Theatre Co. v. General Cinema,
et al., N. D. Texas, C. A. No. 3-77-0170, were included
in the motion for transfer in this litigation.  Since the
time of the Panel's hearing on this motion, defendants have
obtained a directed verdict against the plaintiff in Wilder,
and consideration of the question of transfer with respect
to that action is therefore moot.  In FLW, the court in
the Northern District of Texas has recently dismissed all
but one of the claims.  The two parties involved in that
single remaining claim have advised the judge to whom FLW
is assigned, and he in turn has notified the Panel, that
this claim "will not be tried, but will be settled."  This
claim presently is scheduled for trial commencing on June
4, 1979.  On the recommendation of the judge before whom
FLW is pending, FLW is excluded from the transfer we are
herewith ordering.

of Utah.  The complaint in each action involves alleged violations of the federal antitrust laws in connection with the distribution, licensing and exhibition of motion picture films.

Each action was filed by one or more entities that own and operate motion picture theaters (exhibitors).  The principal defendants in these actions are a total of eleven motion picture producers and/or distributors (distributors). One of these distributors has been named as a defendant in each action, and five other distributors have been named as defendants in eight of the nine actions before the Panel. Four of the remaining five distributors have been named as defendants in at least two of these actions.[2]  In addition, with only one exception (the Utah action), the complaints include certain exhibitors as defendants; a few of the exhibitor defendants are named as defendants in two or more actions.

The complaints in all nine actions allege that defendants conspired, in violation of Section 1 of the Sherman Act, unreasonably to restrain trade and commerce in the distribution, licensing and exhibition of motion picture films, and that defendants, in violation of Section 2 of the Sherman Act, conspired to, attempted to and did in fact monopolize that

[2]   Most of these distributors are allegedly members of the Motion Picture Association of America, which itself is named as a co-conspirator in the Tennessee action.

trade and commerce.  The primary purposes. of defendants'
conduct, the complaints generally allege, were 1) to establish
an artificially high price and/or rental rate for the licensing
and exhibition of motion picture films; 2) to establish
the terms and conditions for such licensing and exhibition;
and 3) to eliminate or reduce competition for motion pictures
distributed by the defendant distributors.  In particular,
the complaint in each action charges that the defendants
named in that action engaged in one or more of the following
allegedly illegal acts or practices:  "blind-bidding" on
motion picture films (requiring exhibitors to negotiate
or bid for film licenses without an opportunity to see the
films in advance); "move overs" (switching a motion picture
from the screen to which a bid was awarded to different
screens, which were not involved in the bidding process);
giving preferential treatment in the awarding of licenses
to large theater circuits; bid rigging or sham bidding as
to motion picture licenses; fixing prices and terms of film
licenses; fixing movie admission prices; "block-booking"
of motion pictures (licensing or offering for license one
motion picture feature or group of features on condition
that an exhibitor will also license another feature or group
of features released by a distributor during a given period);
"splitting" (a device by which exhibitors agree among themselves

that only one, or certain of them, will attempt to license any particular motion picture offered by a given distributor in a specific geographic market); unreasonable "clearances" (the contractual periods between "runs" of a film); and boycotts.

Most of the complaints allege that some of these acts or practices are prohibitted under the terms of a series of consent decrees of nationwide scope and application entered as a result of United States v. Paramount Pictures, Inc., 334 U.S. 131 (1948), and related proceedings such as United States v. Loew's, Inc., et al., 1950 CCH Trade Cases ¶62,573 (S.D.N.Y.).[3]  Most of the distributor defendants in the present litigation are subject to those decrees.

The allegations of the complaints in five actions before us (the Southern District of Texas[4] and Arizona actions,

---

[3]    The practices enjoined in Paramount include, inter alia, the following:  1) Granting any license in which minimum prices for admission to a theater are fixed by the parties in any manner; 2) Agreeing to maintain a system of clearances; 3) Granting any clearances between theaters not in substantial competition, or granting or enforcing any clearance against theaters in substantial competition in excess of that reasonably necessary to protect the license in the run granted; 4) With only limited exceptions, making any franchise agreements; 5) Making any formula deal or master agreement (a licensing agreement covering the exhibition of films in a number of theaters, usually comprising a circuit); 6) Licensing any film for exhibition upon any run in any theater in any other manner than that each license shall be offered and taken theater by theater, solely upon the merits and without discrimination in favor of affiliated theaters, circuit theaters or others.

[4]    Tercar Theatre Company (Tercar), the sole plaintiff in one of the Southern District of Texas actions, is named as a defendant in the other Southern District of Texas action.

and the California action) specifically focus on the geographic
area in which plaintiffs in those actions operate theaters.
The complaint in the Georgia action is not limited on its
face to the area in which plaintiff in that action is located,
but discovery in that action has been restricted geographically
to a relatively local area by court order.  A somewhat similar
geographic limitation on discovery has been accomplished
by stipulation in the Florida action, but at least some
plaintiffs in this action presently are seeking permission
to conduct additional discovery concerning "national issues."
Transcript at 24.  In the Tennessee action, where the complaint
includes allegations of a national conspiracy, plaintiff
has not to date contested defendants' confinement of their
responses to plaintiff's discovery requests to particular
geographic areas.  Finally, the Utah action also includes
allegations of a national conspiracy, and discovery in that
action has proceeded on national issues.

II.  PROCEEDINGS BEFORE THE PANEL

Twelve of the fourteen plaintiffs in the Florida action
have moved the Panel, pursuant to 28 U.S.C. §1407, to centralize
these nine actions[5/] for coordinated or consolidated pretrial

---

[5/]   Movants have advised the Panel of two potential tag-along
actions -- Twentieth Century-Fox Film Corporation v. Dubinsky,
et al., D. Nebraska, C.A. No. 78-0-276 and Stopulos, et
al v. Buena Vista Distribution Co., S.D. Iowa, C.A. No.
75-16-D.  See Rules 1, 9 and 10, R.P.J.P.M.L., 78 F.R.D.
561, 562, 567-69 (1978).  Pursuant to Rule 10(e), id. at
568-69, all parties now before us are ordered to keep the
clerk of the Panel informed of any additional potential
tag-along actions in this litigation.

proceedings.  Movants have not suggested a transferee district.
Plaintiffs in the Southern District of Texas actions subsequent-
ly moved the Panel to centralize this litigation in the
Southern District of Texas; these plaintiffs oppose Section
1407 transfer to any other forum.  All other responding
parties -- which include all distributor defendants, many
exhibitor defendants, the remaining two plaintiffs in the
Florida action, and plaintiffs in the Georgia, Tennessee
and Utah actions -- oppose Section 1407 transfer.

We find that these actions involve common questions
of fact and that, with the exception of the Georgia action,
centralization of these actions under Section 1407 in the
Southern District of Texas will best serve the convenience
of the parties and witnesses and promote the just and efficient
conduct of the litigation.

III.  THE QUESTION OF TRANSFER

Opponents to transfer argue that each action before
the Panel raises a multitude of individual factual issues,
and that no overriding common questions of fact are involved
in this litigation. The core of each complaint except one,
opponents contend, is the allegation that certain exhibitors,
which are in competition with the plaintiff in the limited
geographic area from which plaintiff draws its patronage,
conspired with certain distributors to prevent plaintiff
from obtaining films by causing plaintiff's bids or offers

to license films to be rejected in favor of those of competing exhibitors.  Thus, opponents maintain, most of the complaints allege a separate conspiracy involving a variety of different distributor and exhibitor defendants, market areas and time periods.  And although some of the complaints include sweeping allegations relating to antitrust violations outside the local area in which a plaintiff operates, as a practical matter discovery in all but one action has been almost totally limited to those local areas, opponents state.

Such disparate factual allegations and localized discovery requests are inevitable in these actions, opponents assert, given the nature of the motion picture licensing process. Arriving at the final terms upon which a film will be licensed to a particular exhibitor is a complex business calculation which depends on a distributor's estimates concerning a number of distinctly "local" factors including, inter alia, the grossing potential of a film in a given market, the age and other characteristics of the potential audience for the film, the grossing potential of specific theaters in that market for that audience, and the licensing terms offered by the operators of those theaters, opponents argue. Opponents further contend that numerous courts that have dealt with alleged antitrust violations concerning the distri-bution, licensing and exhibition of films (including many of the specific acts and practices enumerated on pages 3-4, supra) have held that these allegations must be resolved on the basis of local issues.

Also, opponents contend that unique questions of fact clearly predominate in the present actions because of defenses raised, or almost surely to be raised, in each action. In response to each plaintiff's contention that plaintiff was not able to license films as a result of illegal conduct, the defendants state that they will attempt to prove that any failure to obtain films was caused by legitimate business circumstances peculiar to that particular plaintiff -- for example, that plaintiff was not awarded a film because plaintiff's bids or offers were inferior to bids or offers of competing theaters, or that plaintiff was not awarded films because of its theater's poor location or less desirable facilities.

Opponents deny that Section 1407 transfer would serve the convenience of the parties and witnesses or promote the just and efficient conduct of these actions.[6]  While some opponents admit that a few of the witnesses for the distributor defendants might be called to give depositions in more than one action, these opponents maintain that, in the light of the local nature of the issues, even testimony of the same witness about marketing films in one city will

---

[6]   Some opponents contend that Section 1407 proceedings would be particularly complicated by the fact that Tercar is the plaintiff in one of the Southern District of Texas actions and a defendant in the second Southern District of Texas action.

have little or no relevance to marketing practices in another
city.  If there is any such relevance, these opponents state,
duplication can be avoided by filing notices of a particular
deposition in all actions.  At any rate, all opponents contend,
because the licensing of motion pictures is done market
by market, the vast majority of discovery concerns witnesses
and factual issues that vary widely from market to market.
Even where a party is a defendant in more than one action,
opponents argue, the employees of that party who have knowledge
of relevant facts generally differ from action to action.
Thus, opponents assert that Section 1407 transfer would
increase the costs of litigating these actions by entangling
the parties in massive, and often quite irrelevant, coordinated
or consolidated pretrial proceedings.  Opponents also urge
that Section 1407 proceedings are particularly inappropriate
here because pretrial proceedings in several actions
are very well advanced and some of the actions may be nearly
ready for trial.

We find these arguments unconvincing.  While we recognize
that each action before us may involve some unique, localized
factual issues, a careful review of the entire record before
the Panel has persuaded us that all these actions, regardless
of the market area involved, share numerous common questions
of fact on the economic and conspiratorial issues, particularly
regarding the manner in which film distribution decisions
are made in the motion picture industry.

The national conspiracy alleged in the complaint in
the Utah action necessarily encompasses many aspects of
the somewhat more limited conspiracies alleged in many of
the other actions before us.  See, e.g., In re Cement and
Concrete Antitrust Litigation, ____ F. Supp. ____, ____
(J.P.M.L., filed February 28, 1979) (slip opinion at 4);
In re Airport Car Rental Antitrust Litigation, 459 F. Supp.
1006, 1007 (J.P.M.L. 1978).  In the Utah action, plaintiff,
which operates approximately 140 theaters located in the
states of Utah, Arizona, Nevada and California, alleges
that six distributor defendants[7] have agreed to 1) fix
the terms and conditions upon which motion pictures are
licensed to exhibitors throughout the United States; and
2) distribute their motion pictures through blind-bidding.
Plaintiff further alleges that defendants have established
and maintained a national monopoly in the distribution of
motion pictures.  Thus the allegations of this complaint
alone provide a unifying theme to this litigation.  As we
stated in In re "East of the Rockies" Concrete Pipe Antitrust
Cases, 302 F. Supp. 244, 248 n.3 (J.P.M.L. 1969):

> If there is, as claimed by plaintiffs, an overall unlawful
> multi-state conspiracy affecting a large number of
> local markets, in which small local producers join,
> each small local producer is responsible for the conspira-
> torial activities of all on the basis of agency.
> McCandless v. Furlaud, 296 U.S. 140, 56 S.Ct. 41, 80
> L.Ed. 121; Standard Oil Co. of Cal. v. Moore (C.A.
> 9) 251 F.2d 188, cert. den. 356 U.S. 975, 78 S.Ct.
> 1139, 2 L.Ed.2d 1148.  Local markets and local conspiracies
> are not synonymous.

_____

[7]   Plaintiff in the Utah action has reached a settlement
with two of these six defendants.

In addition to the overriding claims raised by plaintiff in the Utah action, our conclusion that the actions before us share numerous factual issues is buttressed by the strong commonality of distributors as defendants in these actions. See, e.g., In re Commonwealth Oil/Tesoro Petroleum Securities Litigation, 458 F. Supp. 225, 229 (J.P.M.L. 1978). Moreover, movants have represented to us that discovery already conducted in some of these actions "demonstrates that regional decisions are made or approved (tacitly or overtly) on a national level." For example, movants state, various licensing instruction manuals published by some of the distributor defendants and obtained by plaintiffs in this litigation provide that particular minimum terms and licensing policies for any given film are "inaugurated and substantially controlled" by supervisory and headquarters personnel. And at the hearing on this matter, counsel for plaintiffs in the two Southern District of Texas actions stated:

> While it seems there are markets where suits are filed claiming only violations in those markets, all the decisions in the industry are made by eight or nine men who are the general sales managers of the various companies. They decide the sales policy, the blind bidding policy, the bidding criteria, the subjective criteria in awarding the pictures, the rejection and negotiations of all bids, and they seem to be able to place their pictures on the terms and guarantees and play time as they decide, regardless of the state of the bidding records, and we have found in deposing local people that they all say that those decisions were made at the home office, either Los Angeles or New York, and consequently when you go to take those depositions you find you are deposing the same people.

Transcript at 11-12.

We are thus convinced that transfer under Section 1407 for coordinated or consolidated pretrial proceedings is necessary in order to prevent duplicative discovery, eliminate the possibility of inconsistent pretrial rulings, and conserve the time and efforts of the parties, the witnesses and the judiciary. The transferee judge, of course, has the authority to schedule discovery and other pretrial proceedings on any issues unique to a particular market area, party,[8] or group of parties to proceed in separate tracks concurrently with the common pretrial proceedings, thus enhancing the efficient conduct of all aspects of this litigation. See In re Republic National-Realty Equities Securities Litigation, 382 F. Supp. 1403, 1405-06 (J.P.M.L. 1974). Moreover, no party need participate in pretrial proceedings unrelated to that party's interests. See, e.g., Parts I and II, §§2.31, Manual for Complex Litigation (rev. ed. 1977).

On the recommendation of the judge before whom the Georgia action is currently pending, we are excluding that action from our transfer order. He has advised us that

---

8/    The fact that Tercar is both a plaintiff and a defendant in the Southern District of Texas actions should not unduly complicate coordinated or consolidated pretrial proceedings. We note that both Texas actions are already pending before the transferee judge in this litigation, and that Tercar is one of the parties before us that favors Section 1407 transfer. We are confident, as we have observed in analagous situations in the past, that any unique discovery needs regarding Tercar and any antagonistic interests among the parties may be accommodated by the transferee judge in designing the pretrial program. See, e.g., In re Corrugated Container Antitrust Litigation, 447 F. Supp. 468, 471 (J.P.M.L. 1978).

a final discovery conference was held in the Georgia action
on March 16, 1979, and that the remaining discovery is scheduled
to be concluded shortly and is of a local nature.  Accordingly,
transfer of the Georgia action is not now appropriate.
See In re Multi-Piece Rim Products Liability Litigation,
_____ F. Supp. _____, _____ (J.P.M.L., filed January 18, 1979)
(slip opinion at 11-12).  We recognize that all actions
in this litigation are not at the same stage of pretrial,
but we are convinced that the remaining eight actions before
us will benefit from centralized pretrial proceedings under
Section 1407.[9/]  We observe that if and when an action or
claim is, in fact, ready for trial or otherwise ready for
remand because the transferee judge finds that the Section
1407 proceedings pertaining to that action or claim are
completed, the transferee judge may suggest to the Panel
that the Panel remand the action or claim to its transferor
court.  28 U.S.C. §1407(a), Rule 11(c)(ii), R.P.J.P.M.L.,
78 F.R.D. 561, 569 (1978).  See, e.g., In re A. H. Robins
Co., Inc. "Dalkon Shield" IUD Products Liability Litigation,
453 F. Supp. 108 (J.P.M.L. 1978).  And, of course, procedures
exist to allow discovery completed in any action to be made

---

9/   We also note that additional actions are pending which
may be appropriate for inclusion in the coordinated or consoli-
dated pretrial proceedings we are herewith ordering.  See
note 5, supra.

available to all interested parties in the other actions.
See, e.g., In re South Central States Bakery Products Antitrust
Litigation, 433 F. Supp. 1127, 1130 (J.P.M.L. 1977); Manual,
supra, at Parts I and II, §§3.11.

We are keenly sensitive to the argument that Section
1407 transfer may cause certain parties to suffer some incon-
venience.  See, e.g., In re "East of the Rockies" Concrete
Pipe Antitrust Cases, supra, 302 F. Supp. at 254-56 (concurring
opinion).  Nevertheless, we are confident that prudent counsel
in all actions, under the supervision and guidance of the
transferee judge, can apportion their workload and otherwise
combine forces to effectuate a significant overall savings
of cost and a minimum of inconvenience to all concerned
with the pretrial activities. See, e.g., In re Sugar Industry
Antitrust Litigation, 427 F. Supp. 1018, 1027 (J.P.M.L.
1977); Manual, supra, at Part I, §§1.90-1.93.

IV.  THE TRANSFEREE DISTRICT

On the basis of the record before us, no single district
stands out as the most appropriate transferee forum.  We
have selected the Southern District of Texas as the transferee
district because that district is centrally located and
easily accessible to all parties in the pretrial proceedings.
Moreover, the Honorable John V. Singleton, Jr., who heretofore
has been supervising the two actions already pending there,
has had an opportunity to become familiar with many aspects
of this litigation.

IT IS THEREFORE ORDERD that transfer pursuant to 28 U.S.C. §1407 of the action  entitled <u>Southway Theatres, Inc. v. Cinerama Releasing Corp., et al.</u>, N. D. Georgia, C. A. No. C75-1631 A, be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. §1407, the remaining actions listed on the following Schedule A and pending in districts other than the Southern District of Texas be, and the same hereby are, transferred to the Southern District of Texas and, with the consent of that court, assigned to the Honorable John V. Singleton, Jr. for coordinated or consolidated pretrial proceedings with the actions listed on Schedule A and pending there.

ROY W. HARPER, JUDGE OF THE PANEL, dissents from this opinion.

DOCKET NO. 366

SCHEDULE A

CIVIL ACTION NO.

MIDDLE DISTRICT OF FLORIDA

Florida West Theatres, Inc., et al. v.          74-326-Civ-J-T
Warner Brothers Distributing Corp., et al.

SOUTHERN DISTRICT OF TEXAS

Tercar Theatre Co. v. General Cinema            H-77-1294
Corp., et al.

Universal Amusement Co., Inc., et al. v.        H-78-192
General Cinema Corp., et al.

DISTRICT OF ARIZONA

Cineworld Corp. of Texas, et al. v. United      77-055-TUC
Artists Corp., et al.

Harkins Amusement Enterprises, Inc.             77-736-PHX-WEC
v. General Cinema Corp., et al.

WESTERN DISTRICT OF TENNESSEE

Balmoral Cinema, Inc. v. Allied Artists         77-2101
Pictures Corp., et al.

SOUTHERN DISTRICT OF CALIFORNIA

Family Enterprises, Inc. v. Twentieth           78-0061-T
Century Fox, et al.

NORTHERN DISTRICT OF GEORGIA

Southway Theatres, Inc. v. Cinerama             C75-1631A
Releasing Corp., et al.

DISTRICT OF UTAH

Syufy Enterprises v. Columbia Picture           C-77-0181
Industries, Inc., et al.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

NOV -5 1979

PATRICIA D. HOWARD
CLERK OF THE PANEL

11/5/79

BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE MOTION PICTURE LICENSING          )          DOCKET NO. 366
ANTITRUST LITIGATION                    )

Re:  Ten Potential Tag-Along Actions

OPINION AND ORDER
———————————

BEFORE MURRAY I. GURFEIN, CHAIRMAN, AND ANDREW A. CAFFREY,*
ROY W. HARPER, CHARLES R. WEINER, EDWARD S. NORTHROP AND
ROBERT H. SCHNACKE, JUDGES OF THE PANEL.

PER CURIAM

I.   BACKGROUND

     A.   The Panel's Earlier Decisions

     The Panel, pursuant to 28 U.S.C. §1407, previously

centralized eight actions in this litigation in the

Southern District of Texas for coordinated or consolidated

pretrial proceedings before the Honorable John V. Singleton,

Jr.  In re Motion Picture Licensing Antitrust Litigation,

468 F. Supp. 837 (J.P.M.L. 1979).  On June 27, 1979, and

September 27, 1979, the Panel denied motions by numerous

parties in this litigation for reconsideration of the Panel's

decision.

     B.   The Proceedings in the Transferee District

     On April 17, 1979, Judge Singleton entered an order

governing the practice and procedure of the actions in

the transferee district.  That order, inter alia, consolidated

the actions for pretrial proceedings.  In addition, the

---

*    Judge Caffrey took no part in the decision of this
matter.

order states in part as follows:

> The court is acutely aware of the magnitude of
> this litigation and of the potential expense to the
> litigants and the burdens that the litigation will
> impose upon all the parties and attorneys.  To that
> end the court expects and will, if necessary, require
> all attorneys and clients to cooperate to the fullest
> extent to lessen the potential expense and the burden
> of time.  For example, the court would expect that
> counsel on all sides attempt in every way to keep
> to a minimum the number of motions proposed to be
> filed and, where possible, file only one motion, pleading
> or brief pertaining to the same subject matters.
> By local rule in this court, the number of interrogatories
> is limited to thirty questions that can be submitted
> to any one party or any one witness.  Also, the court
> expects complete cooperation regarding the scheduling
> of depositions and this likewise should be limited
> to only those depositions that are absolutely necessary
> for either discovery or for the perpetuation of testimony.

At the first pretrial conference in this litigation,
held on May 30, 1979, Judge Singleton ordered the parties
to establish a joint document depository in Houston, Texas,
in which all parties were to place all pre-transfer discovery
documents, deposition transcripts and interrogatory answers;
to prepare status reports on the actions in the transferee
district; and to file "position papers" concerning the
appropriate scope, order and priority of discovery in this
litigation.  Judge Singleton also organized the parties
into three "liaison groups" (plaintiffs, distributor defendants
and exhibitor defendants), and appointed steering committees
for plaintiffs and the distributor defendants.

On August 3, 1979, a second pretrial conference was
held in the Southern District of Texas.  In an order dated
August 20, 1979, Judge Singleton ruled that discovery in
the actions in the transferee district would be confined
"for the present to the common legal and factual issues."

Judge Singleton's order further provides that:

> [a]ll discovery presently on file in any of the actions
> comprising this litigation, and all discovery to be
> undertaken while these cases are consolidated in this
> court, shall be considered as having been made in and
> available to all parties in all other actions herein and
> all later transferred 'tag-along' cases, absent a showing
> of good cause why it should not apply to some particular
> case or party.

The August 20, 1979, order also establishes a schedule for

document discovery on the "common legal and factual issues."

On September 6, 1979, all plaintiffs in seven of the

eight actions in the transferee district made a motion

for leave to file a proposed "unified and consolidated"

complaint. This complaint, if allowed by Judge Singleton,

would, inter alia, (1) be brought on behalf of a class

consisting of "all ... persons or entities ... who are

or were engaged in the business, among others, of exhibiting

feature motion pictures to the public throughout the United

States (exclusive of defendant distributors) during the

period January 1, 1978" to the present; (2) add several

new defendants to each action; (3) include nearly every

alleged violation of Sections 1 and 2 of the Sherman Act

that is raised in the complaints in the actions in the

transferee district; and (4) add some alleged violations

of Section 1 of the Sherman Act that have not to date been

raised by the complaints in the transferred actions.

Plaintiff in the eighth action in the transferee district

has also recently moved to amend the complaint in that

action to, _inter alia_, add new defendants.  No class is
sought in this action.

    C.   The Potential Tag-Along Actions

    Ten potential tag-along actions presently are before
the Panel[1] either on the Panel's own initiative by means
of orders to show cause issued by the Panel pursuant to
Section 1407 and Rule 10(b), R.P.J.P.M.L., 78 F.R.D. 561,
568 (1978), and/or as a result of motions under Section
1407.[2]

    The allegations of the complaint (and counterclaim,
if any) and the status of discovery and other pretrial
proceedings in each of the actions before us may be summarized
as follows:

                   _____

[1]   An additional action, General Cinema Corporation of
Texas v. United Artists Corporation, N.D. Texas, C.A. No.
CA3-77-170, was also before the Panel at the time of our
hearing on this matter.  Since that time, however, that
action has been settled and dismissed, and on October 17,
1979, we vacated our order to show cause concerning the
action.

[2]   On July 26, 1979, and August 8, 1979, the Panel issued
orders to show cause why seven of the ten actions now before
us should not be transferred to the Southern District of
Texas.
    On July 26, 1979, the Panel also issued an order to
show cause, in the Virginia action before us, why (1) the
claims raised in the complaint and the counterclaim in
this action should not be transferred to the Southern District
of Texas, and (2) the original claims brought by plaintiffs
should not be separated and remanded to the Eastern District
of Virginia.  Some of the defendants-counterclaimants in
this action, however, subsequently moved the Panel to transfer
plaintiffs' original claims to the Southern District of
Texas.
    Finally, on August 17, 1979, certain defendants in
the two Western District of New York actions moved the
Panel to transfer those actions to the Southern District
of Texas.

1.  American Multi-Cinema, Inc., et al. v. Motion
    Picture Association of America, Inc., et al.,
    C.D. California (hereinafter referred to as AMC)

AMC was filed on May 10, 1979, by eight exhibitors
(six of which are named as defendants in at least one action
in the transferee district) against seven distributors;
the Motion Picture Association of America, Inc. (MPAA),
a corporation allegedly engaged in nationwide activities
on behalf of its member distributors; and Sargoy, Stein
& Hanft (Sargoy), an "auditing firm."[3/]

Plaintiffs allege that, in violation of Sections 1
and 2 of the Sherman Act, defendants and unnamed **co-conspirators,**
**from at least 1970 until the present, have conspired**
to fix license fees, admission prices and certain uniform
practices and conditions favorable to distributor defendants
in connection with the distribution of motion pictures
throughout the United States.  Plaintiffs also allege that
defendants have monopolized the domestic distribution of
motion pictures. In furtherance of this alleged conspiracy,

---

[3/]    The complaint in AMC describes Sargoy as follows:

Sargoy is primarily an auditing firm totally controlled
by distributor defendants, performs services solely
for them on matters pertaining to distribution of
feature motion pictures and conducts on their behalf,
throughout the United States, audits and reviews of
the books and records maintained by exhibitor licensees,
including those maintained by plaintiffs.  Sargoy
also employs a number of attorneys who purport to
and do act from time to time as attorneys solely for
distributor defendants.

Although neither MPAA nor Sargoy is currently a defendant
in any of the actions in the transferee district, plaintiffs
in the transferee district are seeking leave to add MPAA
and Sargoy as defendants.

the complaint alleges, defendants have, _inter_ _alia_:   (1) blind bid motion pictures; (2) joined together for the purpose of using the MPAA's Classification and Rating Admin- istration (CARA) to discriminate in favor of MPAA members and independent producers who distribute their pictures through members of MPAA, and to rate deceptively the motion pictures distributed by MPAA members; (3) limited the source of supply and discouraged new entry into the production and distribution of motion pictures; (4) imposed uniform license agreements upon exhibitors; (5) construed provisions of license agreements uniformly; (6) enforced these uniform license provisions "through purported audits ... and other forms of policing practices and coercive activities conducted by Sargoy...."; (7) required exhibitors to charge certain minimum admission prices in order to obtain licenses to exhibit motion pictures; and (8) set and maintained uniform licensing fees, terms and conditions.   The defendants are alleged to have implemented and enforced their activities through use of personnel and facilities of Sargoy and the MPAA, and by establishing joint and interlocking business arrange- ments.

Only minimal, if any, discovery and other pretrial proceedings have yet occurred in AMC.

2.   General Cinema Corporation v. Buena Vista Distribution
      Co., Inc., C.D. California (hereinafter referred
      to as General Cinema)

This action was commenced in August, 1978, by General Cinema Corporation (General Cinema), the largest theater chain in the United States (and a defendant in four of

the actions in the transferee district), against Buena
Vista Distribution Co., Inc. (Buena Vista), the domestic
distributor of motion pictures produced by Walt Disney
Productions.   The complaint alleges that, in violation
of Section 1 of the Sherman Act, Buena Vista and the exhibitor
licensees which contract with Buena Vista have agreed to
raise and fix theater admission prices throughout the United
States by the use of minimum per capita royalty provisions
in Buena Vista's license agreements.   These provisions
provide for the computation of the minimum film rental
owed to Buena Vista on the basis of an amount (generally
either a flat figure or an amount derived by multiplying
a percentage figure offered by the exhibitor times an amount
stated by Buena Vista) for each person admitted to the
theater to view the picture.   Plaintiff claims that these
provisions amount to price fixing because, as a practical
economic matter, exhibitors must charge an admission price
at least equal to the amount they must pay to Buena Vista
as the minimum film rental calculated under the per capita
royalty provision.

Buena Vista has filed a counterclaim against General
Cinema, charging that General Cinema and other exhibitors
have agreed to illegal splitting arrangements.

Discovery has begun in this action, but no discovery
cutoff or trial dates have been established.

3.  Fred Stein, et al. v. United Artists Corporation,
    et al., C.D. California (hereinafter referred
    to as Stein)

Stein was commenced in May, 1979, by two individuals[4]
against four distributors, four exhibitors, and certain
individual defendants.  Plaintiffs allege, inter alia,
that, in violation of Section 1 of the Sherman Act and
California state law, defendants and unnamed co-conspirators
refused to license first run motion pictures to Century's
theaters located in Hollywood and Westwood, California;
denied Century's theaters the opportunity to bid or negotiate
for or to obtain first run motion pictures; supplied pictures
to Century's competitors instead; gave Century's competitors
preferential treatment in bidding or negotiating for first
run motion pictures; and refused to evaluate Century's
offers on their merits and in a non-discriminatory manner.
The complaint alleges that defendants undertook these activities
in order to coerce one of the plaintiffs to sell the individual
defendants a one-half interest in Century.

The complaint further alleges a cause of action based
upon the common law doctrine of intentional interference
with contractual rights and prospective advantage.  Plaintiffs
allege that defendants' activities disabled Century from
repaying its indebtedness to the plaintiffs and their in-
dividual assignors, or to the creditors whose claims they
guaranteed.

----
4/   One of these individuals has brought Stein both in
his own right and as an assignee of Century Cinema Circuit,
Inc. (Century), a former exhibitor of motion pictures in
southern California and Arizona.  The other individual
plaintiff has commenced this action in her own right and
as assignee of the right of two other individuals who had
an unspecified relationship to Century.

Discovery has commenced in this action.  Some depositions have been taken, and answers to interrogatories are due in the near future.  Defendants have recently filed a motion under Rule 12(b)(6), Fed.R.Civ.P., to dismiss <u>Stein</u> on the ground that plaintiffs do not have standing to bring their action.

### 4.   <u>Holiday Theatres, Inc. v. Wometco Enterprises, Inc., et al.</u>, S.D. Florida

This action was commenced by a Miami, Florida exhibitor and presently is pending against eight distributors, three exhibitors and one producer.[5/]  Plaintiff alleges that defendants, in violation of Section 1 of the Sherman Act, have conspired to discriminate against plaintiff and to favor the exhibitor defendants by: (1) allotting first run motion pictures to the exhibitor defendants, and refusing to deal with the plaintiff pursuant to splitting agreements among the exhibitor defendants; (2) granting unlawful and unreasonable clearances (the contractual periods between "runs" of a film) over the plaintiff in favor of the exhibitor defendants; (3) refusing to allow plaintiff to exhibit motion pictures on any run, or demanding exorbitant prices or imposing unreasonable conditions on plaintiff; (4) engaging in blind, discriminatory or illegal bidding, or prearranged

---

[5/]   Three additional distributors and four other exhibitors originally were defendants but have settled the claims against them in this action.

negotiation; and (5) engaging in conduct violative of the Paramount decrees.[6]

At least one distributor defendant has filed a counter-claim charging that plaintiff and other exhibitors in the Miami, Florida area have entered into splitting agreements in that area.

Substantial discovery has been conducted in this action, and in April, 1979, the court restricted discovery to the years 1974 through and including 1978, and to the Miami area.  On May 20, 1979, the court granted a motion by plaintiff to stay all discovery in this action pending the Panel's ruling.  At least one defendant moved for reconsideration of the order, and in late May, 1979, the court modified the stay to provide that all discovery previously ordered and all discovery noticed or requested prior to the entry of the stay order was to be completed.

> 5.   National Amusements, Inc. v. Columbia Pictures Industries Inc., et al., D. Massachusetts

This action was filed in early 1977 by a multi-state exhibitor against Columbia Pictures Industries, Inc., a distributor; and ITC Entertainment, a producer and/or dis-tributor of motion pictures.  Plaintiff alleges that Columbia and various unnamed distributors and some named and some **unnamed exhibitors have conspired:**

---

6/   The Panel earlier discussed the Paramount decrees in In re Motion Picture Licensing Antitrust Litigation, supra, 468 F. Supp. at 839.

in cities throughout the United States in which [plaintiff]
owns and operates theatres, to restrain the trade of
[plaintiff] in and from the right to compete in the
licensing and exhibition of motion pictures, and to
restrain and/or exclude [plaintiff] from the licensing
and exhibition of motion pictures, all in violation of
Sections 1 and 2 of the Sherman Act [and the <u>Paramount</u>
decrees]....

The complaint further alleges that Columbia and unnamed distributors

and some named and unnamed exhibitors have engaged in somewhat

similar activities in, specifically, the "greater New York

metropolitan area"; that Columbia and unnamed distributors have

conspired to fix the terms and conditions upon which motion pictures

are licensed throughtout the United States; and that Columbia, ITC

Entertainment and General Cinema Corporation have entered into

an agreement whereby "motion pictures produced or to be produced

by ITC and distributed by Columbia have been preempted by General

Cinema in every city in the United States in which General Cinema

operates motion picture theatres, including those cities in which

the plaintiff also operates motion picture theatres."

Columbia has filed counterclaims against the plaintiff

alleging that (1) plaintiff and other exhibitors have entered

into splitting agreements in certain local areas; (2) plaintiff

has underreported its gross receipts for theater admissions

and certain other miscellaneous charges; and (3) plaintiff

has consistently failed to pay film rentals owed to Columbia.

The parties have engaged in extensive discovery in

this action, and Columbia represents in its papers before us that plaintiff "has concluded its examination of Columbia's chief distribution executives and has completed discovery on all issues relating to Columbia's general distribution policies." A motion by Columbia to schedule all remaining discovery in this action presently is pending.

6.  Quad Cinema Corporation v. Twentieth Century Fox Film Corporation, et al., S.D. New York

This action was commenced in late 1976 by an exhibitor which operates a theater in New York City against a number of distributors and exhibitors. The complaint alleges that, in violation of the federal antitrust laws, defendants conspired to deprive plaintiff and other independent theaters in the New York area of the opportunity "to exhibit, and to compete for the right to exhibit on earlier runs and availabilities, the feature pictures of superior quality and those having the greatest box office potential." Since this action was filed, however, the parties, with the court's active participation and approval, have engaged in focusing the issues in this action. All parties before the Panel in this action generally agree that:

> the issue in this case, distilled from the broad allegations of the complaint, is whether with respect to the licensing in lower Manhattan of approximately 125 complained of runs of 93 motion pictures, on runs other than first run, during the period November 1972 through November 1976, the defendant exhibitors and distributors entered into a conspiracy, whose object it was to favor the theatres owned or operated by the exhibitor-defendants.

The parties have engaged in extensive discovery in this action, and the court has made various rulings confining the scope of discovery to limited areas of lower Manhatten, and requiring the production of a limited variety of documents relating to specific runs at certain theaters located in seven counties in the New York City area.  Although the parties in this action were unable to meet a "target date" of June 30, 1979, for the completion of discovery, the plaintiff and the distributor defendants estimate in their papers before us that discovery can be completed "in a number of months."  The New York court, however, has stayed all discovery pending the Panel's determination in this action.

     7.   <u>Lyell Theatre Corporation, et al. v. Loews Corporation, et al., W.D. New York</u>

and

<u>Lyell Theatre Corporation, et al. v. Columbia Pictures Industries, Inc., W.D. New York</u>

These two actions were commenced in, respectively, 1971 and 1974 by the same exhibitor (and a related entity) against many of the same distributors and exhibitors. The complaints are virtually identical except for the geographic area involved, and allege that defendants conspired, in violation of Sections 1 and 2 of the Sherman Act, to discriminate against plaintiffs and in favor of the exhibitor defendants concerning the licensing of motion pictures in, respectively, the Rochester and the Buffalo, New York areas.

The parties before the Panel agree that the Buffalo action has been informally stayed pending resolution of the Rochester action.  The parties are in disagreement, however, concerning the status of pretrial proceedings in the Rochester action.  Counsel for certain defendants who have moved for Section 1407 transfer in these actions, see note 2, supra, assert in their papers before us that discovery is "far from complete in that action."  Plaintiffs and the remaining defendants before the Panel contend in their papers that the moving parties' local counsel and counsel for all other parties have agreed with the magistrate handling discovery in the Rochester action that discovery has nearly been completed in this action.

    8.   American International Pictures, Inc., et al.
             v. Price Enterprises, Inc., et al., E.D. Virginia

This action was commenced in December, 1978, by several distributors against eight exhibitors, each of which operates at least one theater in the Norfolk-Virginia Beach, Virginia area, and an individual stockholder in these exhibitors. The exhibitors have counterclaimed against the distributor plaintiffs, and also named as defendants on the counterclaim two additional distributors, two exhibitors, Sargoy (see note 3, supra) and a partner in Sargoy.[7]   On May 25, 1979,

_____

[7]   This counterclaim is the third of three relatively recent antitrust actions by Norfolk area exhibitors against many of the same distributors and exhibitors named as defendants in the counterclaim.  The same attorney has represented the exhibitor plaintiffs (or counterclaimants) in each of the three proceedings.  The first of these proceedings was commenced in 1975 and settled prior to trial in July, 1976.  In the second action, defendants recently obtained a directed verdict from the same judge before whom the Virginia action now before us is pending.

note 3, supra) and a partner in Sargoy.[7]   On May 25, 1979,
the district judge in this action granted a motion by plaintiffs
for severance and separate trial of the complaint and the
counterclaim.  In his opinion and order granting severance,
the judge described the allegations of the complaint and
the counterclaim as follows:

> The complaint and counterclaim in the present
> dispute involve both separate legal and factual issues.
> The original complaint essentially alleges that defendants
> have fraudulently underreported the gross receipts
> of their theatres during the exhibition of motion
> pictures licensed from the plaintiffs.  The license
> fees for such pictures are based upon a percentage
> of box office receipts.  Thus, the complaint alleges
> defendants have not paid the full amounts properly
> payable under the licensing contracts.  Accordingly,
> the substantive law of contracts and fraud of the
> State of Virginia will apply.
>
> On the other hand, the counterclaim contains
> no allegations sounding in contract or fraud.  The
> allegations of the counterclaim advance causes under
> the federal antitrust acts.  Count I of the counterclaim
> alleges violations of Section 1 of the Sherman Act,
> including price-fixing, refusals to deal, bid rigging
> and other unlawful restraints of trade.  Count II
> alleges an attempt to monopolize under Section 2 of
> the Sherman Act.  Count III basically alleges a combination
> and conspiracy to restrain trade unlawfully and to
> injure defendants in the operation of their businesses.
> Count IV and two paragraphs of Count III allege the
> plaintiff distributors wrongfully combined and conspired
> to institute the underreporting complaint.

The claims raised in the complaint recently were tried,
and on October 24, 1979, we vacated our order to show cause
as moot and denied the Section 1407 motion for transfer
as moot concerning those claims.  No trial date has yet
been established for the counterclaim.

9.   Paramount Pictures Corp., et al. v. Heritage Theatres, Inc., W.D. Oklahoma

This action was commenced in October, 1978, by nine distributors against an exhibitor (Heritage) that operates several theaters in Oklahoma City, Oklahoma.  The distributors, in a complaint very similar to that in the Virginia action, supra, allege that Heritage fraudulently underreported its box office receipts to the distributors and, accordingly, has not paid the distributors the full amount of rent due on motion pictures licensed from the distributors under their licensing agreements with Heritage. The distributors seek an accounting, compensatory and punitive damages, and attorneys' fees.

Heritage has filed an extensive counterclaim against the distributor plaintiffs, Sargoy, and a partner in Sargoy. Heritage's counterclaim alleges, inter alia, that since November, 1972, the defendants and various co-conspirators "have entered into an unlawful combination and conspiracy to unreasonably restrain and to monopolize interstate trade and commerce in motion picture films, and particularly [Heritage's] right ... to contract for and to exhibit 'first run' feature films in the City of Oklahoma City, Oklahoma." Many of the counts of the counterclaim also focus seriatim on a distributor defendant's allegedly discriminatory conduct in denying Heritage the opportunity to license certain motion pictures, and on an alleged conspiracy among the distributors and Sargoy regarding an audit of Heritage that was conducted by Sargoy.

On August 8, 1979, the judge before whom this action is pending granted the distributors' motion to sever the counterclaim and to order separate trials of the complaint and counterclaim.  No trial dates have yet been established.

III. POSITIONS OF THE PARTIES

Most parties that have responded before the Panel (including all responding distributors) oppose transfer of any of the actions presently before us.  The parties that favor transfer of one or more actions are as follows: (1) ten exhibitors[8] who are parties in Stein, General Cinema, the Southern District of New York action or the two Western District of New York actions favor transfer of those actions;[9] (2) plaintiffs in the Western District of New York action that focuses on the Buffalo market area favor transfer of that action, since little or no discovery has taken place in that action; (3) plaintiffs' steering committee in the transferee district favors transfer of AMC and General Cinema, "conditioned upon a finding by

---

8/   Some of these parties describe themselves in their papers before us as "exhibitor-affiliated former distributors."

9/   Five of these exhibitors are defendants in Stein; two are defendants in the Southern District of New York action; two are defendants in each of the two Western District of New York actions; and one is the plaintiff-counterclaim defendant in General Cinema.
       These ten exhibitors, along with five additional exhibitors that are plaintiffs in AMC, originally favored transfer of AMC.  These exhibitors recently withdrew their support of transfer in AMC because of "the possibility of conflict if ... AMC ... were transferred...." It should be noted that each of these fifteen exhibitors is represented by the same counsel.  This counsel also represents some of these exhibitors as defendants in the transferee district, as well as two additional exhibitors that are named as defendants in some of the previously transferred actions.

the Panel that the parties, after [transfer], can be properly
aligned to reflect their true interests in the litigation";
(4) the defendants-counterclaimants in the Virginia action
favor transfer of the counterclaim in that action, but
have offered no arguments in support of this position;
and (5) the defendant-**counterclaimant in the Oklahoma**
action **favors transfer of that action.**

IV.   HOLDING

On the basis of the papers filed and the hearing held
concerning these ten actions, we recognize that at least
some of the actions before us and the actions in the transferee
district share questions of fact on the economic and conspir-
atorial issues, particularly regarding the manner in which
film distribution decisions are made in the motion picture
industry.   Nevertheless, we are persuaded that transfer
of the actions before us under Section 1407 would not neces-
sarily serve the convenience of the parties and witnesses
or promote the just and efficient conduct of these actions
and/or the previously transferred actions. Accordingly,
we deny the motion to transfer the Western District of
New York actions, and vacate our orders to show cause in
the remaining eight actions.

V. THE QUESTION OF TRANSFER

The ten exhibitors that favor transfer of five of
the actions now under consideration argue that the alle-
gations of the complaints and the pretrial status of these
five actions render these actions clearly appropriate for
transfer under the guidelines established by the Panel

in this litigation.  See In re Motion Picture Licensing
Antitrust Litigation, supra, 468 F. Supp. 837.  These exhib-
itors urge the Panel to dismiss the objections to transfer of
the five actions that have been made to the Panel by numerous
parties based on (1) the fact that the complaints in many
of the actions focus on a limited geographic area, and
(2) the status of discovery and other pretrial proceedings
in these actions. In response to these objections, these
exhibitors argue that (1) the Panel has already expressly
held that many of the previously transferred actions, which
also alleged or eventually focused on local conspiracies,
were appropriate for transfer, see id. at 839-42; and (2)
the record before the Panel, as well as status reports
submitted to Judge Singleton in the transferee district,
reflect that pretrial proceedings in many of the previously
transferred actions are at least as advanced as pretrial
proceedings in the potential tag-along actions in which
these exhibitors are involved.

These exhibitors point out that the Panel, in ordering
transfer, stressed that "[t]he national conspiracy alleged...
in the Utah action necessarily encompasses many aspects
of the somewhat more limited conspiracies alleged in many
of the other actions before us."  Id. at 841.  Similarly,
these exhibitors contend, the nationwide allegations of
the complaint in General Cinema, see supra at 6-7, supply
a further unifying theme to this litigation.  These exhibitors
argue that the allegations in General Cinema concerning
the alleged fixing of theater admission prices will necessitate

discovery concerning practices and activities undertaken
either throughout, or in a substantial number of competitive
market areas in, the United States, and that this type
of national discovery could easily be encompassed by the
national discovery program ordered by Judge Singleton in
the transferee district.

The counterclaimant in the Oklahoma action contends
that the complaint in this action, although brought by
distributors under the guise of an action seeking to recover
for the underreporting of theater admission receipts, is
simply one invidious but integral aspect of a conspiracy
between, primarily, the distributors and Sargoy to fix
and control the terms, prices and conditions of the licensing
of motion picture films and to monopolize the market in
the distribution and exhibition of first run films.  The
counterclaimant notes that similar allegations already
are involved in at least one action in the transferee district
(the Tennessee action previously transferred by the Panel),
and that plaintiffs in the transferee district presently
are seeking leave to add Sargoy as a defendant.

Thus, this  counterclaimant argues, transfer of the
Oklahoma action would prevent duplicative discovery, eliminate
the possibility of conflicting pretrial rulings, and conserve
time and effort of the parties, the witnesses and the judiciary.

We find these arguments unconvincing.  Initially,
we note that in our earlier opinion and order in this liti-
gation we excluded two actions from transfer because of

the advanced status of pretrial proceedings in those actions.
In re Motion Picture Licensing Antitrust Litigation, supra,
468 F. Supp. at 838 n.1, 842.  We have concluded that some
or all claims raised in many of the actions now before
us are also inappropriate for transfer, either because
discovery and other pretrial proceedings are well advanced
in those actions, and/or because the parties in those actions
have expressed before us their lack of interest in the
"national" or "common" discovery that Judge Singleton has
determined should presently serve as the focus of the consoli-
dated pretrial proceedings in the transferee district.
The purposes of Section 1407 would clearly not be accomplished
by transferring actions which are nearly resolved, or by
requiring parties who have no interest in the consolidated
pretrial proceedings to reap only delay and other inconvenience
as a result of transfer.

Discovery in the Southern District of New York action
and in the Florida action has been restricted by court
order to a limited geographic area and is extremely well
along.  In addition, all responding parties in the Florida
action have disclaimed any interest in conducting any of
the remaining discovery on other than a purely local level.
Similarly discovery in the Massachusetts action is, on
the basis of the record before us, nearing completion.
In addition, we have been advised by Columbia, one of the
two defendants in this action, that any potentially relevant
discovery concerning Columbia's distribution policies and
and practices has been completed, and that the remaining

1  discovery relates exclusively to local issues and local
2  market areas.  No other party in the Massachusetts action
3  has disputed this representation.  Finally, although there
4  is some dispute on the record before us with regard to
5  the amount of discovery yet to be accomplished in the Western
6  District of New York action concerning the Rochester market
7  area, we are persuaded that the remaining discovery will
8  be concluded shortly and is of a local nature.  We note
   that this action has been pending for eight years.

9      Although the status of pretrial proceedings concerning
10 the counterclaim in the Virginia action is not, on the
11 basis of the record before us, sufficiently advanced alone
12 to support a denial of transfer of the counterclaim, we
13 are convinced that the counterclaim can be resolved most
14 expeditiously in the Eastern District of Virginia.  As
   we have already noted, see note 7, supra, the judge who
15 severed the complaint and the counterclaim in the Virginia
16 action has had a unique opportunity from previous litigation
17 to become thoroughly familiar not only with the allegations
18 of the counterclaim and with the motion picture industry
19 as it pertains to the Norfolk, Virginia area, but also
20 with many of the parties and counsel involved in the Virginia
21 counterclaim.  Under these circumstances, we are confident
22 that the Virginia court will quickly and efficiently dispose
   of the counterclaim.

23     We also find that neither the convenience of the parties
24 and witnesses nor the just and efficient conduct of the
25 Western District of New York action that focuses on the

Buffalo market would be enhanced by Section 1407 transfer.

Some of the defendants have represented in their papers

before us, and no party has disputed before us, the following:

> [I]t has been the understanding of all parties that
> further discovery in the Buffalo action is to await
> final determination in the Rochester action.   The
> legal and factual issues raised in the Buffalo action
> are similar to those in the Rochester action, and
> it has been decided upon by counsel to both actions
> that discovery in the Rochester action should be completed
> and the action tried before any further proceedings
> are conducted in the Buffalo action.   The basis for
> this agreement has been that a determination of the
> Rochester action may be dispositive of the issues
> raised in the Buffalo action and, therefore, would
> possibly vitiate any further proceedings in that action.

We are of the view that it would be counterproductive to

disturb the course of conduct allegedly agreed upon by

all parties concerning the Buffalo action. This conclusion

is strengthened by the fact that both Western District

of New York actions presently are assigned to the same

judge who, from his familiarity with the nearly completed

Rochester action, is in the best position to ensure the

expeditious disposition of the Buffalo action.

We find that the claims raised in the complaints in

General Cinema and the Oklahoma action are inappropriate

for Section 1407 transfer because the complaints in those

two actions and the pleadings in the previously transferred

actions raise fundamentally different factual questions.

Buena Vista is the sole defendant in General Cinema, and

none of the actions in the transferee district involves

the minimum per capita royalty provision allegedly used

in Buena Vista's license agreements with exhibitors.[10]
Similarly the complaint in the Oklahoma action focuses
on unique issues involving Heritage's allegedly fraudulent
underreporting of its gross receipts concerning particular
films exhibited in the Oklahoma City, Oklahoma area.  Thus
we conclude that individual, rather than common, factual
issues predominate in General Cinema and in the complaint
in the Oklahoma action vis-a-vis the previously transferred
actions.

Remaining before us for disposition are AMC, Stein,
and the counterclaims in General Cinema and the Oklahoma
action.  While AMC, Stein and the counterclaims in the
other two actions raise some unique factual issues, we
recognize that AMC, Stein and these counterclaims share
questions of fact with the previously transferred actions.
We find the following thoughts from the concurring opinion
in In re "East of the Rockies" Concrete Pipe Antitrust
Cases, 302 F. Supp. 244, 254 (J.P.M.L. 1969), however,
to be particularly instructive here:

> The statutory objectives are not necessarily served
> by requiring joint pretrial whenever some -- even
> many -- questions of fact are common to a large number
> of cases.  In some such cases, if not in these at
> hand, coordination and consolidation may impair, not
> further, convenience, justice and efficiency.  To
> put it in other words, neither the convenience of
> witnesses and parties nor the just and efficient conduct
> of actions are served, ipso facto, by transfer just
> because there are common questions of fact in the
> civil actions involved.

---

[10]  We also note that even the proposed unified and consoli-
dated complaint in seven of the previously transferred
actions does not specifically challenge the legality of
this aspect of Buena Vista's licensing agreements.

In our earlier opinion and order in this litigation,
we noted that each action then before us involved some
unique, localized issues, In re Motion Picture Licensing
Antitrust Litigation, supra, 468 F. Supp. at 841, and we
expressed our concern that Section 1407 transfer might
cause some parties to suffer a degree of inconvenience,
id. at 842.   Nevertheless, we concluded that transfer was
warranted so that the parties would be given an opportunity
to engage in centralized discovery and other pretrial pro-
ceedings concerning whether, inter alia, as the proponents
of transfer then before us argued, "'regional decisions
are made or approved (tacitly or overtly) on a national
level' ... [and] particular minimum terms and licensing
policies for any given film are 'inaugurated and substantially
controlled' by supervisory and headquarters personnel."
Id. at 841.   This opportunity is now set in force under
the close supervision of Judge Singleton, and the fruits
of that process will become a matter of record, regardless
of our decision today.   Thus, we are convinced that the
inclusion at this time in the consolidated pretrial proceedings
in the transferee district of additional actions or claims,
with, in significant part, their attendant unique legal
and factual nuances, would serve only to add further layers
of complexity to those proceedings, without providing any
overriding benefit.

Finally, we note the following argument of the opponents
of transfer:

> Unlike lawsuits arising out of a common disaster or
> a group of nearly identical antitrust class actions
> filed at one point in time, the motion picture distri-
> bution cases represent a continuing stream of commercial
> disputes....[11]  [We fear] that a high percentage
> of this continuing series of unrelated disputes will
> be transferred for 'coordinated' or 'consolidated'
> pre-trial proceedings in the Southern District of
> Texas to the great inconvenience of all parties involved
> and to the great burden of that District....  The
> frequency with which cases of this sort are filed
> makes it difficult to foresee that there will ever
> come a time when pre-trial discovery in all of the
> transferred and 'tag-along' cases will be concluded....

We, of course, are vitally concerned that pretrial proceedings

in the transferee district remain manageable, and that

those proceedings move expeditiously toward conclusion.

In light of the special circumstances of this docket, we

are convinced that at present the most efficacious manner

in which the parties in the transferee district can resolve,

at least for purposes of pretrial proceedings, the common

questions of fact on the economic and conspiratorial issues

is to allow those parties to proceed, **unencumbered** by the

addition of new issues in additional actions or claims,

along the course established, and to be further refined,

by Judge Singleton.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C.

§1407, the Panel's orders to show cause filed with respect

to the actions entitled

American Multi-Cinema, Inc., et al. v. Motion Picture
Association of America, Inc., et al., C.D. California,
C.A. No. CV-79-1703-DWW

_____

11/  Some of these parties state that since 1969 at least
96 antitrust actions have been commenced that involved
motion picture distribution practices and named three or
more distributors as defendants.

Fred Stein, et al. v. United Artists Corporation, et
al., C.D. California, C.A. No. CV79-2137-WPG;
General Cinema Corp. v. Buena Vista Distribution Co.,
Inc., C.D. California, C.A. No.CV78-3284-LTL(Kx);
Holiday Theatres, Inc. v. Wometco Enterprises, Inc.,
et al., S.D. Florida, C.A. No. CV78-2420-Civ-JAG;
Quad Cinema Corp. v. Twentieth Century Fox Film Corp.,
et al., S.D. New York, C.A. No. 76 Civ 4452;
National Amusements, Inc. v. Columbia Pictures Industries,
Inc., et al., D. Massachusetts, C.A. No. 77-155-Z;
Paramount Pictures Corp., et al. v. Heritage Theatres,
Inc., W.D. Oklahoma, C.A. No. Civ-78-01115-D; and
American International Pictures, Inc., et al. v. Price
Enterprises, Inc., et al., E.D. Virginia, C.A. No.
78-651-N,

be, and the same hereby are, VACATED.

IT IS FURTHER ORDERED that the motion pursuant to

Section 1407 to transfer the actions entitled Lyell Theatre

Corp., et al. v. Loews Corporation, et al., W.D. New York,

C.A. No. 1971-571; and Lyell Theatre Corp. v. Columbia

Pictures Industries, Inc., et al., W.D. New York, C.A.

No. 1974-132, to the Southern District of Texas be, and

the same hereby is, DENIED.